JOHN W. WESCOTT, attorney-general of the State of New Jersey,

*v.*

AMERICAN CREOSOTING COMPANY.

[Decided April 14th, 1916.]

A license granted under the Wharf act of 1851 (*Comp. Stat. p. 5856*) is not executed by the stringing of piles along the dock line on either side of, and tied to, a pre-existing wharf; and the land thus enclosed is not thereby vested in the licensee.

---

*Mr. John W. Wescott,* attorney-general, for the informant.

*Mr. Francis Lafferty,* for the defendant.

BACKES, V. C.

This is an information by the attorney-general, who seeks to have a wharf erected by the defendant on the southerly shore of the Passaic river at Newark, declared a purpresture, and an injunction for its removal. The defendant claims the right to maintain the wharf under a license granted to its predecessor in title, Baeder and Adamson, by the board of freeholders of Essex, by virtue of the Wharf act of 1851 *(Comp. Stat. p. 5856)*, the fifth section of which provides that such license

"Shall * * * authorize and empower the said applicant to erect the dock, wharf or pier at any time within five years from the date whereof; and said docks, wharves, or piers, or so much thereof as may be erected within said five years, shall be vested in said shore owner, in the same manner, for the same estate, and with the same limitations over, in remainder or otherwise, as the lands along said tide-waters in front of which the same were made may be; and such license shall not be assignable, except with, and as appurtenant to said lands, and shall pass, by any sale of said lands, as appurtenant thereto."

The license was granted February 23d, 1876, and extended across the whole of the river front of the licensee's land, eight hundred and ninety-one and sixty-five hundredths feet, and into the river to the dock line, fixed by a commission appointed for that purpose by the legislature in 1872. Years before the license was obtained, Baeder and Adamson maintained a wharf on their property some sixty feet in width, reaching into the river a considerable distance beyond the after-established dock line; but by what right, if any, is not disclosed. This wharf is still standing and in use by the defendant. Within the year of the grant the licensees sunk piling along the dock line the entire length of their property, seven or eight feet apart, joined together by twelve-inch cap logs or stringers and fastened to the wharf on either side. Nothing else was done until 1911, when the defendant built another wharf, the one in question, immediately adjoining and westerly of the old one. By that time the string of cap logs and piling had disintegrated.

A single question is submitted for decision: Was the enclosure of the land by the row of piling and top pieces an execution of the license within the intent of the act above quoted, so as to

divest the state of its land and vest it in the licensees? Such an enclosure, without more, was held by Vice-Chancellor Emery in *Stockton, Attorney-General,* v. *American Lucol Co., 86 Atl. Rep. 572,* to be not a compliance with the terms of the grant. Assuming the doctrine of that case to be sound, defendant's counsel controverts its application to the present situation, because of the added feature here of the old wharf, of which they contend, the row of piling and the connecting stringers when erected became an integral part and laterally expanded and spread it over the whole of the licensee's eight hundred feet and more of river front. The pre-existence of this wharf, it seems to me, affords no differentiating factor, inasmuch as the premise upon which the theory of automatic enlargement rests is unsubstantial, for the reason that when Baeder and Adamson got their license from the freeholders they put in the piling, not for the purpose of extending the wharf, but as Mr. Adamson says, "to conform to the laws"—simulation—tying them by stringers to the wharf was an economic measure without thought or intent of being complemental of the statutory requisite; and further, because the price of the state's land was a practical and not an ideal compliance with the condition of the grant. True, it may be, as the defendant says, that the pilings were used and advantageously, for the mooring of boats preparatory to charging and discharging cargo, but the most that can be claimed on that score is that they furnish a convenience and facility for the work at the wharf, without being a constituent or essential part of it. I do not mean to indicate that the proprietary right acquired by a licensee erecting a wharf is confined to the area covered by the platform or floor space of the structure, but my view is that the right is only co-extensive with such immediate lateral fixtures necessary for its maintenance, and as are incidental to a full enjoyment of the privilege. The stretch of piling put in by the licensees to serve another purpose, obviously does not come within this criterion. The design of the act under consideration to stimulate commercial navigation, and the legislative scheme imposing an obligation upon the licensee to build a dock, wharf or pier as consideration for the state's title, mani-

festly demands something more than the mere fencing in or enclosing the land by a line of poles.

The spirit and meaning of the statute is that within the time limited, a licensee shall have *bona fide* erected a "wharf," viz., a space of ground artificially prepared for the reception of merchandise from a ship or vessel, so as to promote the convenient loading and discharging of such vessel (*Bouv. 3449*), or build a "dock," viz., the slip or waterway extending between two piers or projecting wharfs for the reception of ships, sometimes including the piers themselves (Webster) in order to earn a concession and that the land thus ceded was to be confined to the dock, wharf or pier proper. The preemption, by virtue of the license, is not redeemed by a structure covering only a fractional portion of the grant.

The licensees not having in any sense met the requirements of the law, the defendant is adjudged guilty of purpresture in regard to the wharf built in 1911, and it will be ordered removed. So much of the old wharf maintained beyond the dock line, the illegality of which was not denied, will also be ordered removed. Costs to the state.